Ok, we shouldn't assume that I'll be that generous with the clock every time, but as you can see, there were reasons for that in that particular case. The next case before the court is Guzik Technical Enterprises v. Western Digital Corporation, Docket number 14194. This is Chun. It's my understanding that you want to reserve three minutes for rebuttal? That's correct, Judge O'Malley. Ok, this is an appeal from the Northern District of California. Alright, you may begin. Thank you, Your Honor. May it please the Court, I'm Marissa Chun for Appellant Guzik Technical Enterprises. The issue in this case is whether a valid binding contract to settle a major piece of patent litigation was entered by the parties, or whether the parties agreed to draft in good faith that settlement agreement in the days ahead. On its face, GTE's position is that it is an agreement to agree. Let me direct Your Honors to the term sheet itself, the plain language of the contract, and that is the appendix at A199. Three key material terms are phrased as conditional obligations. If you turn to the very first provision, settlement payment, it states that Western Digital is not bound to make any payment until within 30 days after execution of a settlement agreement and a purchase order agreement. Does that really make it conditional, or does that just set the timing for it? Your Honor, it makes it conditional, and in fact, the record below shows that the parties did not, in fact, provide a settlement agreement, a settlement payment, excuse me, because that was conditioned upon a settlement agreement being drafted and executed. Also, conditional items, milestones, which did not occur here. If, in fact, this was an agreement to settle finally this major piece of litigation, this consideration provision would not have been conditioned upon 30 days after execution of the settlement agreement and purchase order agreement. What would have happened? Let's suppose that the dispute that arose in the last hours during this process had not arisen, and things had gone smoothly all the way to ultimate resolution of the case without any dispute. What would have happened by virtue or by way of a further documentation that would have triggered this 30 day period? Yes, Your Honor. The parties actually worked quite diligently in the days after they signed this term sheet. There were four agreements, and the confidential settlement agreement was something that was drafted that would have been finalized, that would have been executed by the party. I guess what I'm asking is, what were they working on? Setting aside for now the dispute that arose with respect to this term sheet. They were working on finalizing the confidential settlement agreement, the purchase order agreement. When you say confidential settlement agreement, do you mean an agreement that would have incorporated the term sheet, or what would it have included other than the term sheet? Your Honor, actually, it's the purchase order agreement that did, in fact, try to incorporate some of the key terms in the term sheet. And the settlement agreement would have said the lawsuit is dismissed without prejudice, and the counterclaims are dismissed without prejudice, each tied to bear its own cost. Is that the kind of thing you're talking about in settlement agreement? Well, the settlement agreement, Your Honor, sets forth, actually, most of these terms that are set forth in the term sheet. Oh, I thought you said that was in the purchase order. Well, the purchase order agreement goes into detail as to the scope and the pricing of the purchase orders that would have constituted that future purchase order obligation. So there were a number of different agreements that the parties were trying to work on and finalize, but what happened... Now, how do you try to get at this? What is it that was still to happen that was really important to the parties that wasn't simply paperwork? And setting aside the dispute that arose with respect to portions of this term. Yes, Your Honor, the parties were trying to work out and finalize what was supposed to be in the purchase order agreement in terms of what would be within the scope of that future... But that's the issue that arises under purchase order scope and pricing in the term sheet. Yes, Your Honor. What I'm asking is, what other than these items were the parties still negotiating? There was an amendment to a master purchase agreement which governed the party's business relationship between Western Digital and GTE, sir. That was one of the four documents that was remaining to be executed and finalized. There was also, I believe, Your Honor, a mutual release with regards to... Mutual releases are standard. So those were the documents that the parties were going back and forth on in the evidence that we had submitted to the district court. I'm sorry. I'm taking up too much of your time on this. I want to go back to some basics. Yes, Your Honor. There are two questions really that the district court had to analyze. One is, did the parties intend to enter into a settlement agreement and were the terms reasonably understood between the parties? In other words, the material terms. Then the second question is, even assuming that a contract was formed, is that contract enforceable? Is that fair? Yes, Your Honor. All right. So your argument on the burden of proof, I'm having a hard time with your debate over what the district court did. Now, I mean, it could have been a little cleaner the way the district court said it. But in this particular instance, as I understood it, the contract upon the defendant. And it was only the burden of establishing that the contract, once the court found it to exist, was unenforceable that the court felt should shift the burden at that point. Isn't that really what the district court did? No, Your Honor. I would respectfully disagree. There are two categories of cases where these settlement agreement disputes arise. One is where the parties do not dispute that a contract has been established. This case, Your Honor, falls in the second category where the parties vigorously disputed whether a contract had been formed at all. And in that case, Your Honor, the district court. You say you vigorously disputed. You only disputed to that effect. You stood in front of the district court judge and said, we have settled this case. It's over. It's done. Let the jury go home. I mean, how do we not hold you to those representations to the district court? Your Honor, I would suggest that the court look more carefully at the representations that were made to the court. With regards to, at every step, Your Honor. We can read you what you said in a joint statement to the court on page 164 in the sentence. Parties hereby notify the court that they have a breach agreement and a signed term sheet and jointly request for the trial to be taken out of the calendar while they memorialize the term sheet and further agreement. Memorialize doesn't sound to me like they need to further negotiate a settlement agreement. It sounds like they need to put the settlement agreement they've breached into proper legal format. That's the statement you signed and submitted to the district court in a document called Joint Notice of Settlement. Your Honor, with regards to the document that GTE's then counsel signed, I would agree that the label of the pleading perhaps was not the most articulately or accurately phrased. But if you look at the contents beyond the sentence that Your Honor quoted, the parties expect this process to result in a dismissal shortly. It reflects an expectation, Your Honor, not a certainty. And if you look at the representations That's a pretty clear read. I mean, all that seems to me to suggest is it's going to take us a few days to memorialize our settlement agreement and then we will be done with it all together. I mean, this happens all the time. Parties get close to a settlement agreement, they have the settlement agreement, and then they tell the district court we need a couple more days to put it into writing. But it's not that agreement hasn't been reached, it's that it hasn't been put into the final legal format. If that's the case, then it's an agreement and that the district court can determine that you reached a settlement agreement. Why isn't that what happened here? Because in those majority of cases, Your Honor, there is a meeting of the minds, an agreement as to the same material terms. In this case, getting back to Judge O'Malley's excellent point, with regards to the intent of the parties, that meeting of the minds did not exist here. And that was made evident when the parties tried to finalize the negotiation with regards to the settlement. And in fact, Your Honor, I would respectfully disagree. Why isn't that, because you talked about a meeting of the minds, and it may be that you'd have an argument if what we had was verbal representation back and forth. We have, I don't know how many page documents, sending forth a lot of terms very specifically, and the only thing you seem to dispute is how you interpret a specific portion of that document. That to me seems more like a question of either it's too indefinite to be enforced, not that it wasn't an agreement, or actually left over for a brief question of whether somebody is living up to what was actually termed by that language. Your Honor, with regards to the term sheet, I would submit that the various terms here, both with regards to the settlement payment, with regards to the last term of the term sheet, where it clearly says that the parties are to, in good faith, draft a dismissal and release provision, that's phrased conditionally. The parties would dismiss an issue of release subject to the settlement payment being made. These are not, this is not language of binding final settlement. Of course I do. You could have it, I'm sorry, go ahead. Go ahead, you're on. You would have, if you had a document titled settlement agreement, and it had all these terms, at the end of the day, it might have a term that said, ten days after this agreement is signed, one party will pay the other party X amount of dollars. Ten days after that, they will file a notice of dismissal. That's conditional future language. That doesn't mean it's not a settlement agreement. It's just setting up the timing for things to occur. Your Honor, this goes beyond that, because the paragraph, the final paragraph, states and cabins and conditioned the terms that are set forth above. It says that the parties would, in good faith, draft within 48 hours a settlement agreement. And it's not simply a matter of timing as to certain events. Because, in fact, Your Honor, a number of these milestones were not met, and there was, in fact, no meeting of the minds with regards to this purchase order and pricing provision. Let me go back to first principles on this point. I mean, you argue that this is all subject to de novo review, but every case you cite has to do with contract interpretation under California law. But this is the question that we're addressing here, is contract formation, the first question, the initial question, correct? Yes, Your Honor. And how do you deal with the fact that under California law, that's not a question of de novo review for us. This trial court had a hearing, had, you know, the parties in, went through all the term sheets, went, was living with you back and forth in terms of the representations being made to the court, and had a signed agreement in front of them. How are we to say that the trial court committed clear error when it made the factual finding that a contract was formed? Your Honor, I believe that the issues here are actually legal issues. The court said that this inquiry was a legal one. My honorable opponents also agree that the heart of this appeal pertains to legal issues. And with that, factual findings are reviewed for clear error. In this case, the court looked at the terms of the settlement of the term sheet itself. And it relied upon incompetent evidence. We cited, Your Honor, California Supreme Court case Parsons v. Bristol Development, where a court is looking at either incompetent evidence or if there is a legal dispute. Those are clearly matters that this court can review as a matter of de novo review. We believe that this is a legal issue with regards to interpreting whether, in fact, this contract has been formed. To return to, I think it was Judge Hughes' question a little earlier that I wanted to follow up on, I think you said in response to his question that there was no meeting of the minds here. And the reason we know there's no meeting of the minds is that there was a different understanding of the scope of the clause that deals with Princess Otter's scope, right? Yes, Your Honor. Well, wouldn't that suggest, if that is the definition of a meeting of the minds, wouldn't that suggest that any time there is a contract interpretation problem that arises at some point during the existence of the contract, that that would suggest that there was never any formation of the contract at all, which isn't the law. No, Your Honor. Why isn't what you're saying essentially that proposition? In this case, Your Honor, the legal analysis really has two levels. One is whether there was a meeting of the minds that this term sheet was intended to settle the litigation, okay? In terms of the object of this term sheet. The second issue, which I think the parties have devoted a lot of time, is whether there was a meeting of the minds as to the purchase order scope and pricing provision. With regard to the first- But you're not arguing that disagreement as to the second means that there was no formation of the contract? Your Honor, we do. We believe that's an imperial- You do argue that. Now, okay. If that's your argument, why isn't that simply saying that any time there's a contract construction problem, that that shows that there was no meeting of the minds, ergo no formation of a contract? Because Your Honor, in this case, that's not all we have. We have- Yes, yes. But I want to know why. You said you're making the argument that the fact that there was a disagreement about this term in itself is sufficient to show there was no meeting of the minds. That's what I understood your argument to be. If that's your argument, why isn't that very broad and basically saying there's never formation of a contract in such a situation? Your Honor, I believe that there's a distinction between a problem, an agreement as to a material provision, and in this case, because this was negotiated and signed as a document which would give the parties further time, a little bit more time beyond the December 2 trial date, to finalize the settlement negotiations- Let's assume this was a settlement agreement, that it's a signed settlement agreement, but that part of the settlement agreement included we're going to have a further agreement on a purchase order. We have a settlement agreement, and it turns out, after you have the signed settlement agreement, that you have different understandings of what the obligations are for the purchase agreement as laid out in the settlement agreement, and you can't negotiate the second agreement on purchase orders. Does that render the settlement agreement not an actual, not a formed settlement agreement? Is it a- With regards to your hypothetical, Your Honor, I believe that that would be an interpretation problem, and that that's a problem that we are not faced with here, because I believe that the fundamental issue in terms of- And why is that the case? Because this actually lays out specific provisions, and I won't talk about them because they're highlighted in yellow in my appendix, but it lays out specific provisions relating to the purchase order requirement. It has terms here. It just happened that after this agreement was signed, the parties interpreted these terms differently. Why is it that's what's happening, instead of this is not a signed settlement agreement? Your Honor, the reason why is because if you look at A-206, those terms that were agreed, that they would, in good faith draft, put into a settlement agreement. This can't be the settlement agreement, because as I noted, Your Honor, the dismissal and release, there's no right obligation, because that was contingent upon the settlement payment being made. There was no obligation in terms of the consideration- Wait, I don't understand that part at all. You're saying that there's no settlement agreement until the payment is made, but the payment isn't made until the settlement agreement is effected? That seems completely circular, and also contrary to almost the way all settlement agreements work. You sign the settlement agreement, and then you make the payment. Well, Your Honor, if in fact this were the settlement agreement, then it seems to me that the parties would have drafted this in a way such that the payment was due within 30 days of the signing of this document. That's not what this document said. Moreover, between November when this was signed and March when the court issued its order granting the motion to enforce, there was no settlement payment that was made. Well, that's because you didn't honor your settlement agreement, as the district court found. Yes. All right. Let me ask you a question, because this is important. We keep talking about the terms, and we keep going back and forth, and yet we're supposedly not allowed to talk about them here in open court. Are both sides insisting on the confidentiality of these settlement terms, or can we ... Because some of them are important to discuss. Yes, Your Honor. With regards to GTE's position, we've always insisted, from the inception of this appeal, that this should all be public, and so we do not have any objection to this being discussed. Your Honor, I think if we keep the dollar amounts confidential, I think the remainder of the price and scope provisions are going to be fine. Okay. Thank you. Not that we can easily work around the dollar. Thank you. Okay. I think we're way over your time. I said I wasn't going to be this generous with the clock, but we ended up getting there anyway. So we'll restore your rebuttal. We'll give your friend on the other side an extra three minutes, if needed. Thank you, Your Honor. Thank you, Your Honor. Should we please the court? I wanted to also start at first principles, which is that the appeal here is asking the court to throw away an eight-page written agreement that incorporates, by reference, a ten-page written purchase agreement. That was signed by Guzik's CEO. That was the product of weeks of negotiation between the parties, and that was used by both parties to rely on, to ask the district court to vacate a trial that was to start the following Monday. It was inked on a Friday. Can I start you with the same question I started when you were posing counsel? What remained to be done here on substance? I mean, we have references to this settlement agreement, and it may be that this is being used as a term of art, but I don't understand what was contemplated to be in the settlement agreement that is different from or beyond what we have already seen as agreed to. Very well is the answer, Your Honor. The settlement agreement takes it from a chart form. You see in the settlement agreement that I think it's a settlement agreement, beginning in A199, takes it from a chart form with headers and short abbreviated paragraphs and makes it more lawyered. It presents it in a more traditional fashion with whereas clauses and things along those lines that I think companies like Western Digital and GUZIK are more comfortable with as a formal document, but it doesn't change the substance. It wasn't intended to change the substance of the primary agreements, the material terms that were agreed to. Okay. Now, if that's the case, in order not to have this rely on lawyer argument, can you point to anything in the record that would confirm that the settlement agreement, as that term is used in the term sheet, was simply a recitation, in effect, of what's in the term sheet in the purchase order agreement without any other substantive component? Well, the drafts, Your Honor, start to go back and forth, and I'm trying to find the best starting point for that. This term's argument is that there was this concept of a settlement agreement, which is the ultimate agreement, which had not yet come into being, and that that's the basis for the argument that this is really just an agreement of the parties, but it's not the tentative proposal or set of proposals that the parties are using as a starting point for negotiations, which will end up finding their way into a settlement agreement. Yes, sir. And I'm looking to you to tell me exactly what in the record tells me that's wrong. Oh. I misunderstood your question in the first place. Well, they're really a slightly different question, but that's really the core of what's concerning. Thank you, Your Honor. So, multiple points. The four corners of the agreement itself show you that it's got the material terms. It says it's expressly, the terms of the agreement are expressly there to resolve the disputes between the parties for all claims pending or previously pending in the lawsuit. The signatures are of the principals, not a legal document that's a placeholder. The CEO of their company signs it under a statement that says, oh, agreed. It's then sent to the district court. First, there's the joint statement of settlement that goes to the district court where they say the material terms have been agreed to, the term sheet's been signed. We ask that the trial be taken off calendar. So you have the agreement itself. You have the joint statement of settlement to the court, then you have the party standing up in court Monday morning when trial was supposed to begin. You have Guzik's lawyer saying all the material terms have been agreed to. There's ancillary documents which are the ones they're now relying upon as not so ancillary but as pivotal to the case that are still being worked upon. And we ask the court to take the trial off calendar.  I then stood up and said, we see this as a binding agreement. They sat silent. Judge Graywall then issued an order after that hearing. He reviewed the term sheet. He canceled the trial. He then issued a minute order that says, case has settled. When was it that the email from, I guess, Mr. Alberti, is that right? The key man that said, hold the presses. When was that in the course of all of this? You know what I'm talking about. Well, there was a nine. What happened, Your Honor? I was involved in these negotiations. So after the settlement agreement was signed, the parties had the case taken off calendar. We're then negotiating the four ancillary agreements. We are down to three terms that remain in dispute, and they're relatively small. When all of a sudden, and this is with the addition of the McDermott lawyers, there's a document that comes from Mr. Gilliland who's the Kilpatrick lawyer saying, I've been instructed to provide this wholly rewritten settlement agreement. It's a one-page document. Mr. Alberti, this is Mr. Gilliland? It was Mr. Gilliland, but working together now with the McDermott lawyers. Okay. It's a one-page document. It has nine terms. It removes the covenant not to sue. When did this happen in the course of it? Was this before you appeared before Judge Grewal or after? After. After. So there's two appearances before Judge Grewal I think are relevant. The first one is the Monday the trial was supposed to start on December 2nd. Right. There's the signed settlement agreement beginning at A199. There's the joint notice of settlement. We get up and we tell them there's no need for a trial. And he sends the jurors home. He sends the jurors home. He enters the minute order, case is settled. Then the parties negotiate. Right. When we get this 9.1 page document that removes the protections for Western Digital, then we're done. And we have a joint request for a status conference that goes to the district court. Okay. That request, by the way, Your Honors, says there's a settlement agreement. It refers to the original A199 as a settlement agreement. Now, I know Guzik has taken that to task saying, well, it wasn't authorized to be filed. That's not true. The appendix at A223 shows you that I asked Mr. Gilliland, do I have your approval to file? His response wasn't, wait, hold your horses. That's not a settlement agreement. You're mischaracterizing it. He says, looks fine to me. Please go ahead and file. So we filed the joint request for status conference, calling the agreement a settlement agreement. We go and then have a status conference in which Judge Graywall at 235 says, I thought the case had settled. So this is a sample, Your Honor. There's probably five more things I could come up with that will show you that this was a settlement agreement and everybody knew it. And to go back, to circle back one more time just to make sure I understand this. What remained to be done, in your view, was essentially to massage the term sheet into more acceptable legal language and a dismissal motion, a formal dismissal motion. What else remained? There were four things. One was the dismissal itself, which was the simple form. Northern District of California, basic format. That was agreed to very quickly. There was a nondisclosure agreement that the parties wanted to have that would replace some of the terms they had in their prior business agreements. That was, I think, completed. There was a purchase order agreement and this is most of the work, Your Honor, was put into this in the negotiation of the ancillary documents. Not the settlement, but the purchase order agreement. And the reason for that was the parties had already had a lawsuit. As you know from the record, the consideration being paid is substantial. This was a meaningful lawsuit. And instead of finding ourselves back in court again, the parties were hoping to come to a resolution that would govern the business relationship, that would smooth the road going forward, so that hopefully we wouldn't find ourselves back in court. Most of the negotiations you'll see are on the purchase order agreement. And they're on force majeure, trade on board, things like that, and trying to find ways to leave times, really the details of the business relationship, so hopefully the parties won't be fighting with each other anymore. They're not on the core terms of, you're gonna release me, you're gonna dismiss me, you're gonna pay me cash up front, you're gonna pay me a specific unchanging dollar amount, you're gonna commit to me purchase orders in an unchanging dollar amount. All those things stay the same. So the real, but the heart of it is skewed now, it has morphed into the question of whether or not the parties really understood what was going to be encompassed in this purchase order. In terms of, we know what the dollar figures are gonna be, and there's a firm commitment to make purchase orders up to a specific dollar amount. The, and correct me if I'm wrong here, but it looks like the nine point plan that came from the new lawyers who came in and decided maybe we don't want the settlement agreement that was agreed to, as to that point, what was supposed to be encompassed within the purchase order is pretty consistent with what you claimed was encompassed within the purchase order and what the court found to be encompassed within the purchase order. Absolutely, Your Honor, and I'd go further than that, which is, if you look at all of the red lining that leads up to the final settlement agreement, it's all consistent with Western Digital's position. It shows you that Guzik's first draft of this, the, the agreed term settlement agreement, A199, had a scope and pricing provision that was very spare. You'll see this at A301, and it says, it, it, you could read it to say that the scope of what could be counted towards the purchase order commitments was limited to things on the price list. Western Digital immediately responds at A308, says no. And the four paragraphs of that provision become what they are in A199. First one about pricing, three about what's included and excluded about scope. So, that's the first bit of extrinsic evidence, the lead up to the agreement itself. Then, you have the red lining of the purchase order agreement, the ancillary document after that. The first one from Western Digital, from Guzik, I mean, does it again. Says you're going to be limited on your purchase order commitments only to what's on the price list. I sent an email, A404, that says, that's not what we agreed to. And you'll never see it again. The next version of the agreement, and the one after that, and the one after that, and the one after that, all reflect the understanding that the purchase order commitments would not be limited to only what was on the price list. Then, you have the gap where this dispute erupts. My email, A404, comes on a Saturday morning. That's the Saturday before the Monday where we show up in court in front of Judge Graywall and say, we've resolved the case. We've hammered out the material terms. We're working on the details. It's only ancillary agreements. All those things we've talked about. And so, if there was a real failure of the meeting of the minds, it would have been clear to Guzik as of that email, A404, the Saturday before the hearing with Judge Graywall. They would have said something about it to Judge Graywall. They didn't. All the purchase orders, the drafts go back and forth. They drop the issue. And then, Dr. Guzik, I think he's probably the one who authored these nine points. He sends it to the president of Western Digital personally and annotates it and says, here's the only thing I'm willing to agree with. The lawyers have screwed this up. It's too legalistic. Let's get simple. And even there, where now you'd think this is the most important point as they You can't have anything count towards the purchase orders if they're not on the price list. He doesn't. Not in the annotations and not in the nine points document. The nine points document says any goods that they offer, purchase orders can go to any goods that they offer, and then a second provision of that at the prices on the price list. Just like what we have in the agreement. Of course, if he's talking about the prices on the price list, presumably it excludes goods that aren't on the price list. I mean, that's an implication, at least, that one could draw from that combination of provisions, right? It's not, Your Honor, and here's why. The agreed terms document talks about this NRE that you've seen in the briefing, NRE being non-recoverable engineering, custom design. So the idea is we could ask, Western Digital could ask PUSIC to make some special version, a new connector. But then it wouldn't be on the 2013 prices. Right, but the goods that result from it are expressly included in the scope of what would count towards the purchase order agreements. You'll see that at A199. Well, at A199, but not in the nine points, right? In the nine points, I think it's, well, in the nine points, I think it's, I see your point, Your Honor. He says it would be sold at the prices, but I don't think that's meant to exclude, and he never says. There's no correspondence where he says, and you can only count towards the purchase order. No, but it maybe suggests what his understanding of, or at least what his position, what it was with respect to the inclusion of goods outside of the 2013 price list. I don't think it does, Your Honor. In light of the context of the back and forth that's gone through this case, where they've tried now twice to put that in, maybe this is a third try to do it again, but I don't think so. I see your point, okay. Can I, I just have a factual question. The relationship between Western Digital and, what is it, HG? ST, HGST. Yeah, what is the relationship between them? So, HGST, there used to be three primary disk drive manufacturers in the last five, six years. There was Hitachi Global Storage Technologies, Western Digital, and Seagate. They were three arch competitors. Western Digital acquired HGST, I think, two years ago now, something along those lines. Because of certain antitrust concerns from China, they've been held separate. So, while it's a subsidiary company, it's independently run and operated. And I'm glad Your Honor raised that, because I think that's, that HGST provision in the scope and pricing is dispositive of the question of whether things only on the price list should be counted. Because what the agreed terms document says at 8199 is future purchases from HGST, not counting some that had already been committed, will count. But they're going to be applied only on, exclusively it says, on the commercial terms that already exist between Guzik and HGST, pardon me. That's not the price list. That's not the settlement agreement. They have their own agreements. And then there's a second sentence added after that that says, nothing in this agreement will aggregate, void, I forget all the words, but essentially invalidate any agreements that exist between HGST and Guzik. So, we know future purchases can be made by HGST, not on this price list, and that they will count towards the purchase order commitments. So, it can't be the way they read it. Unless Your Honor has further questions, I'm happy to try to give you back some of my time. OK. Thank you. Thank you. I want to bring it back. Your Honor, I wanted to address a couple of points that my opposing counsel made. First, with regards to Judge Bryson's original question as to what was to happen in the days ahead. With regards to the importance of the purchase order agreement and the settlement agreement, that can't be overestimated because the business relationship of these two entities was such that the scope and the pricing of that was critical. And there were disputes with regards to not only whether competitor products would be made available to Western Digital. The backdrop to all this, to step back, was that on November 15 and 22, the two principals, Dr. Guzik and Mr. Babakanian, had worked out what the scope and pricing of the purchase order provision would be. And that provision was the subject of much back and forth. And there were many items in which the parties disagreed. In our appeal, we focus, of course, on the purchase order scope and pricing provision itself. But whether products that were made for customers, competitors, excuse me, were going to be included, or whether, in fact, V2002 testers, which there was no evidence with regards to Western Digital's argument that this would be the bulk of the purchase order provision and therefore allowed the district court to minimize the importance of the dispute between the parties, all of these things, Your Honor, had still not been finalized. And getting back to Judge Hughes's excellent question as to whether our predecessor counsel's statement somehow gave rise to the district court being able to rely upon those statements that a settlement had occurred, if you look at the actual statements, Your Honor, they were always qualified. They were made in good faith at that time. And predecessor counsel said, we still have a few issues we're working on. This is at A168 on the ancillary agreements. But we are still talking and getting close to district court. Why do our agreements suggest ancillary to the already completed settlement agreement? Well, Your Honor, I think the word ancillary was not the best choice of words. But getting back to the term sheet itself, Judge Hughes, the bottom paragraph, I would urge you to look at that, because that I have. And conditions the fact that these terms were going to be set forth in the settlement agreement. With regards to Mr. Lumish's comment, for instance, that the dismissal was just an easy document, that's not what the term sheet says. The term sheet says that the obligation to dismiss doesn't even ripen until after the settlement payment has been made. That has not happened here. This is a conditional document. And we believe that the evidence supported this. Now, with regards to the minute order, for instance, that opposing counsel relies upon, if one looks at that A165, beyond. Yes, Your Honor. Beyond it saying that the case has settled, there are numerous terms indicating that the court and the parties knew that they were close to a settlement but had not settled. All pending motions are denied without prejudice. Why would the motions be denied without prejudice if the case had been settled? You know, the dismissal was to be submitted within two weeks. The parties are to reach out if they're unable to timely submit dismissal. The district court itself said that, in fact, the parties sounded like they were very close at that time. And in fact, Your Honor, if you look at Western Digital's contemporaneous description of the term sheet, and I believe, Your Honor, that this is at, this is the second point. I'm referring to the civil minute order, but you're way over your time now. So we're going to have to move on to the next page. Yes, Your Honor. So with regards to the, with regards to the court, thank you so much, and we thank you for your time.